# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARREN WONDERLY, individually and behalf of those similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> SHERIFF DONNY YOUNGBLOOD, et al., <br><br> Defendants. | Case No.: 1:16-cv-01621 JLT <br><br> ORDER GRANTING TEMPORARY RESTRAINING ORDER <br> (Doc. 79) |

The defendant has filed an emergency motion for a temporary restraining order precluding plaintiff's counsel from conducting meetings (to occur on January 18 and 19) promoted by advertisements plaintiff's counsel—or someone on their behalf—had been running[1] seeking communication with prospective members of the class. (Doc. 79[2]) In support of the motion, the defense has filed a copy of the advertisement which, notably, informs "Kern County Deputy Sheriffs and Detention Deputies[that] Mahoney Law Group, APC and Briana Kim, P.C. are fighting for you." (Doc. 79-1 at 12) In response, the Court required counsel to participate in a telephonic conference to discuss the situation. (Doc. 80) The conference raised more concerns that it allayed and, consequently,

---

[1] Plaintiff's counsel asserts that a posting ran in the "Bakersfield Sun" related to this litigation. (Doc. 83-1 at 2) The Court has never heard of this publication despite having lived in this community for decades. The defense filed a copy of an ad that ran in the *Bakersfield Californian* on January 15, 2019. (Doc. 79-1 at 12) The Court presumes that plaintiff's counsel erred in asserting in her declaration that someone (the person is not identified) "posted" the ad in the "Bakersfield Sun."

[2] Where the citation does not reference either the "Ashely action" or the "Wonderly action," the docket number is the same in both cases.

1

the Court prohibited the meetings from occurring until it received further briefing from the parties. For the reasons set forth below, the Court **GRANTS** the motion.

**I.     Factual Background**

In the litigation, the plaintiffs claim the defendant failed to comply with the FLSA and pay him as required by law. (<u>Ashely</u> action Doc. 45 at 3-5; <u>Wonderly</u> action Doc. 47 at 3-5) Initially, the plaintiffs were represented by Mr. Petersen, who has since died.

From the outset, the plaintiffs in these cases took the position that notice to the potential collection should not be given. (<u>Ashely</u> action Doc. 53; <u>Wonderly</u> action Doc. 55) Mr. Petersen reported at the scheduling conference that there was very little interest in these cases by the plaintiffs' coworkers and, in fact, there was opposition to the <u>Wonderly</u> action by the union representing the deputies. At the scheduling conference, Mr. Petersen reported that he anticipated no deputies would join the <u>Wonderly</u> action and no more than 15 detention deputies would join the <u>Ashely</u> action. Because counsel did not believe there was much interest in the cases, he did not want to bother with providing notice and the Court was forced to order that notice be given to the prospective collection members. Consistent with Mr. Petersen's predictions, as of the signing of this order, 15 detention deputies have joined the <u>Ashely</u> matter (<u>Ashely</u> action Docs. 77, 78) and no deputies have joined the <u>Wonderly</u> action.

Pursuant to the Court's order that notice would be given, Mr. Petersen stipulated to the notice that would be sent to prospective collection members. (<u>Ashely</u> action Doc. 67; <u>Wonderly</u> action Doc. 69) The notice read in pertinent part, "If you join this lawsuit and Sheriff Youngblood wins, you will receive nothing and will be bound by the result. Under some circumstances, Sheriff Youngblood may make a motion to try to recover some portion of his litigation costs and expenses." <u>Id</u>. at 3. Likewise, it advised, "You will not be retaliated against for participating in this lawsuit. Federal law prohibits Sheriff Youngblood from firing or retaliating against you because of your decision to join the lawsuit." <u>Id</u>. This notice was not sent due to Mr. Petersen's illness. (<u>Ashely</u> action Doc. 69; <u>Wonderly</u> action Doc. 71)

Eventually, Ms. Odenbreit appeared[3] in the cases. (<u>Ashely</u> action Doc. 72, <u>Wonderly</u> action Doc. 74) In November 2018, counsel submitted a stipulated amended notice to be sent to prospective collection members. (<u>Ashely</u> action Doc. 75-1; <u>Wonderly</u> action Doc. 77-1) The notice reads, "If you join this lawsuit and Sheriff Youngblood wins, you will receive nothing and will be bound by the result. Under some circumstances, Sheriff Youngblood may make a motion to try to recover some portion of his litigation costs and expenses." (<u>Ashely</u> action Doc. 75-1 at 4; <u>Wonderly</u> action Doc. 77 at 4) It states further, "You will not be retaliated against for participating in this lawsuit. Federal law prohibits Sheriff Youngblood from firing or retaliating against you because of your decision to join the lawsuit." (<u>Ashely</u> action Doc. 75-1 at 5; <u>Wonderly</u> action Doc. 77-1) The Court required counsel to mail the notices no later than November 30, 2018 and that opt-ins to be received by February 28, 2019. (<u>Ashely</u> action Doc. 76 at 4; <u>Wonderly</u> action Doc. 78 at 4)

On January 15, 2019, counsel for plaintiff began running an advertisement in at least one local newspaper. (Doc. 79-1 at 12) It reads:

### ATTENTION KERN COUNTY DEPUTY SHERIFFS AND DETENTION DEPUTIES

**Mahoney Law Group, APC and Briana Kim, P.C. are fighting for you.**

You have legal rights in the pending court cases: Mark Ashely v. Sheriff Donny Youngblood, Case No. 16-cv-01621-JLT and Darren Wonderly v. Sheriff Donny Youngblood Case No. 16-cv-01621-JLT.

The legal team representing the Plaintiffs in the above cases will be available on January 18, 2019 and January 19, 2019 to answer all of your questions and to discuss your legal rights under the Fair Labor Standards Act of 1938.

The lawyers will also address concerns raised by potential plaintiffs such as: Can Sheriff Youngblood's litigation costs be recovered from you as an opt-in plaintiff?

You have protection from retaliation by the department for my participation in the lawsuits. Retaliation will not be tolerated.

What do I stand to gain from joining the lawsuits?
What are my rights under the Fair Labor Standards Act of 1938?
How are the lawyers fighting for the rights of the deputies?

---

[3] The Court failed to take note at the time that Ms. Odenbreit failed to file an association of counsel in the case. Given that Mr. Petersen has passed away, doing so now is not practicable. Thus, she need not take any further action to become an attorney of record.

3

> Come learn about your rights in the pending lawsuits under the Fair Labor
> Standards Act and talk one-on-one to the lawyers at no cost to you.
>
> River Lakes Golf Course, banquet room
> The legal team will be available during the following times:
> January 18, 2019 from 11:00 a.m. to 6:00 p.m.
> January 19, 2019 from 9:00 to 4:00 p.m.
>
> The lawyers are Katherine J. Odenbreit of Mahoney Law Group, APC
> www.mahoney.law.net: 249 E. Ocean Blvd., Ste. 814,
> Long Beach, CA 90802; (552) 590·5550
>
> Briana Kim of Briana Kim, PC
> www.wagerecovery[4].com; 249 E. Ocean Blvd, Ste 814.
> long Beach, CA 90802; (714) 482-6302
>
> [¶]

Id.

Sometime on January 15, 2019, defense counsel, Mr. Austin, received an email from his client with a copy of the advertisement attached. (Doc. 79-1) The next day at 2:39 p.m., Mr. Austin emailed Ms. Odenbreit and Ms. Kim and expressed concerns about the ad and demanded that they withdraw the ad. (Doc. 79-1 at 2, 14) Mr. Austin indicated that if they did not confirm by 5 p.m. that they would withdraw the ad, he would seek "court intervention." Id. Mr. Austin received no response. (Doc. 79-1 at 2) Ms. Odenbreit was occupied with other matters and did not respond. (Doc. 83-1 at 2-3) Ms. Kim offers no explanation why she did not respond. The next morning, at 10:15 a.m., Mr. Austin telephoned and spoke to Ms. Odenbreit. Id. He asked her to withdraw the ad and cancel the meetings. Id. Counsel did not come to agreement[5] so Mr. Austin told Ms. Odenbreit he would file a motion for temporary restraining order. Id. at 3.

On January 17, 2019, Mr. Austin emailed Ms. Odenbreit and Ms. Kim to report that he had learned that the Court does not hold hearings on temporary restraining orders.[6] (Doc. 79-1 at 3, 16) He indicated that if he learned the Court would hold a hearing, he would let them know. Id. Mr. Austin filed the motion at 8:01 p.m. and the Court provided immediate, automatic email notice of the filing

---

[4] The copy of the ad is illegible related to Ms. Kim's email address as well as the last line, which is omitted, but which appears to be the disclaimer and references the California Rules of Professional. The ad fails to include the conspicuous word, "'Advertisement' or words of similar import." Cal. Rules Prof. Conduct 7.3(c).

[5] Exactly what was said during this conversation is not clear. Counsel provide differing versions. (Compare Doc. 79-1 and 83-1)

[6] In general, the Court does not hold these types of hearings but will do so only if it determines that it is necessary.

4

through its CM/ECF computer system. (Doc. 79) However, Ms. Odenbreit did not review the filing until the next morning. (Doc. 83-1 at 3-4)

On the morning of January 18, 2019, the Court learned of the filing and set up a telephonic conference with counsel to discuss the motion. (Doc. 80) After hearing from counsel, the Court made oral note of its findings and prohibited the meetings from going forward and memorialized its findings and orders in a written order. (Docs. 81-82) It set the matter for further briefing and for argument. Id. at 82.

**II.     Preliminary Considerations**

Plaintiff's counsel asserts that the TRO should not have been granted because defense counsel failed to comply with "the strict rules in the Eastern District." (Doc. 83 at 4) In particular, counsel objects to the moving party's failure to complete a "TRO Checklist." Id.

Notably, this checklist is encouraged to be filed by the Court's electronic case filing system. Though the checklist states that it must be filed with a motion for a temporary restraining order, the filing system does not preclude the motion if it is not attached. Notably, the Court's Local Rules do not require the filing of the checklist and, though it would assist the Court if it were filed and some judges may require it in their Standing Orders, there was no order requiring the checklist in this case.

On the other hand, Local Rule 231 anticipates that the moving party will take certain action, "unless impossible under the circumstances." For example, a party need not file a "complaint" before filing the motion where, as here, the complaint was filed at the initiation of the action. Likewise, provision for a bond need not be made unless otherwise required by statute. (L.R. 151; L.R. 231(c)(6)) Thus, though the Court requires procedural requirements to be met, these requirements vary based upon the circumstances.

Likewise, though Fed.R.Civ.P. 65 requires notice to the opponent, defense counsel provided notice. Mr. Austin, sent an email about the situation on January 16, 2019 to attorneys, Ms. Odenbreit and Ms. Kim (Doc. 83-2) to which neither attorney responded. He then called and spoke with Ms. Odenbreit on January 17, 2019 during which time he told her he would file a motion for temporary restraining order (Doc. 79-1 at 2-3). Mr. Austin followed this up with an email to Ms. Odenbreit and Ms. Kim, telling them that he was filing the motion and that his assistant contacted the Court and

learned the Court does not hold hearings for temporary restraining orders but, if a hearing was set, he would let them know. (Doc. 79-1 at 3, 16) Mr. Austin filed the motion on January 17, 2019 and it was served automatically via email by the Court at 8:01 p.m. (Doc. 79) It was served only to Ms. Odenbreit because Ms. Kim had not associated into the case and was not an attorney of record.[7] The fact that Ms. Odenbreit did not review the motion until January 19, 2019, does not obviate that she received proper notice of the filing of the motion. Then, due to the emergent nature of the situation, the next morning, the Court, after verifying the availability of counsel and providing notice, conducted a telephonic conference. (Doc. 80) Thus, the Court does not find there was a substantive failure to comply with the Court's orders, its Local Rules or Rule 65 and the objections on these grounds are **OVERRULED**.

### III. Discussion and Analysis

The advertisement is inaccurate and misleading in many ways. First, it indicates that Kern County Deputy Sheriffs and Detention Deputies "have legal rights in the pending court cases: Mark Ashely v. Sheriff Donny Youngblood, Case No. 16-cv-01621-JLT and Darren Wonderly v. Sheriff Donny Youngblood Case No. 16-cv-01621-JLT." (Doc. 79-1 at 12) In truth, the detention deputies have an interest in the Ashely matter and the deputies have an interest in the Wonderly matter. The two separate groups do not have an interest in both cases.

Second, it asserts that Ms. Odenbreit and Ms. Kim are "fighting for" the deputies and detention deputies of Kern County (Doc. 79-1 at 12) when, in fact, they represent only the original plaintiffs and those who have opted in. Parks v. Eastwood Ins. Services., Inc., 235 F.Supp.2d 1082, 1083 (C.D. Cal. 2002). The implication of the ad is that whether people decide to opt-in Ms. Odenbreit and Ms. Kim are representing them and their interests. This is contrary to the notice which tells them, "If you do not join the lawsuit by timely returning the attached opt-in form, you will not be eligible to receive any recovery from this lawsuit if successful and the time for you to bring any claim for these issues may expire." Id. at 6. Thus, the ad is not only misleading, it is plainly false. See Jones v. Casey's Gen.

---

[7] The Court failed to take note of this fact when counsel filed their stipulation signed by Mr. Austin and Ms. Odenbreit seeking the Court's approval of the notice to the prospective collection members implying that Ms. Kim was counsel of record (Doc. 77-1 at 4); she was not.

1  Stores, 517 F.Supp.2d 1080, 1084-1085 (S.D. Iowa 2007).

Ms. Odendreit suggests that because the plaintiffs filed complaints, this demonstrates that counsel are "fighting for the rights of potential and existing opt-ins." (Doc. 83 at 9) Notably, the complaint (Doc. 1) and first amended complaint (Ashely action Doc. 45; Wonderly action Doc. 47) was drafted and filed by Mr. Petersen. Thus, exactly how Mr. Petersen's actions in October 2016 and July 2017 translates to Ms. Odenbreit and Ms. Kim "fighting" for those who eschewed these cases is not explained. At the hearing, Ms. Kim asserted that the fact that notice has been given outlining the allegations of the complaint and reporting that the defendant denies the allegations demonstrate that "Mahone Law Group, APC and Briana Kim, P.C. are fighting for you." However, given that the Court was forced to order notice to the prospective collection members **over the objection of the plaintiffs**, the Court rejects that the notice is evidence of counsel's efforts on behalf of the two groups of employees. Indeed, Ms. Kim admitted at the hearing that plaintiffs' counsel have not propounded *any discovery* further demonstrating that they are not yet "fighting for" anyone who has not opted into the litigation.

Third, Ms. Kim filed an appearance—not an association of counsel—in the cases during the evening of January 31, 2019 (Doc. 87), more than two weeks *after* the advertisement ran and about two weeks after the meetings were to occur. Before this, she had *never* sought to associate into the cases, had never appeared in the cases and had never filed an appearance or an association of counsel in either case.

Despite this, the ad implies also that if the members decide to opt-in, they will be represented by Ms. Odendreit and Ms. Kim. It refers to themselves as "The legal team representing the Plaintiffs in the above cases . . ." and also describes the potential collection members as "opt-in plaintiffs" (Doc. 79-1 at 12). Though these are both accurate statements, they are misleading because they imply that an "opt-in plaintiff" or the "potential plaintiffs" have no choice but to be represented by "the legal team representing the Plaintiffs in the above cases . . ." In fact, conspicuously missing from the advertisement is the language from the notice, which expressly tells them, "You have a right to consult with an attorney of your choosing before deciding to join this lawsuit . . . You may also choose to be represented by a separate attorney." (Ashely action Doc. 75-1 at 5; Wonderly action Doc. 77-1). Thus,

7

though they *may* choose to be represented by either Ms. Odenbreit or Ms. Kim or both of them, they are entitled also to reject this representation and choose to be represented by a different lawyer. The ad implies otherwise.

The ad is confusing and misleading also when it states, "You have protection from retaliation by the department for **my** participation in the lawsuits." (Doc. 79-1 at 12, emphasis added) These statements claim that retaliation against the prospective collection members is prohibited—not for their decision to opt-in—but, apparently, for the fact that *counsel* is participating in the prosecution of the actions. This is contrary to the Court's notice that informs prospective members that they are protected from retaliation "because of your decision to join the lawsuit." (Ashely action Doc. 75-1 at 5; Wonderly action Doc 77-1 at 5). Until this ad, most prospective members would probably not have been concerned about retaliation if they chose not to opt-in. The ad suggests that concern may be warranted due to the mere existence of the lawsuits.

With these facts in mind, the Court is concerned also that it has been offered inconsistent explanations of what counsel hoped to achieve with the meetings. Initially, Ms. Odenbreit reported—despite her stipulation to the notice—that the notice was defective because it informed readers of a risk of costs being awarded against them if they opt-in. She stated that the purpose of the meetings was to investigate this so she could report to the Court. However, her opposition to the motion fails to reference this investigatory purpose.

Though Ms. Odenbreit indicates she has learned from unspecified people that there are some who are concerned about a cost award or retaliation if they opt-in, presumably, as she told the Court, she told them her opinion that the likelihood of this was quite low. Likewise, Ms. Odenbreit admitted previously that she would tell them nothing different related to the risk of retaliation than that included in the notice already sent to the prospective members. Indeed, she reports that between 20 and 30 members (from this case and the companion case) have expressed concern about retaliation and a cost award but, apparently, what she has told them has not allayed these fears, given that only 15 people have opted into this case and none have opted into the other. Notably, these are exactly the numbers Mr. Petersen expected when he argued that the Court should not require notice to the prospective collection members.

8

The authorities cited by Ms. Odenbreit fail to demonstrate that the Court acted erroneously when it prohibited the meetings. Plaintiffs rely upon Gulf Oil Co. v. Bernard, 452 U.S. 89 (1981) to assert that "Lower court abused its discretion where prohibited plaintiff's counsel from speaking to potential class members finding." (Doc. 83 at 5) While providing a reminder of the need to make findings—as the Court has done previously and is doing here—Gulf's factual situation is so different here as to provide little guidance.

In Gulf, the court prohibited contact with prospective class members without preapproval of the message to be given the members and in doing so, made no findings regarding whether there was actual or imminent abuse of the Rule 23 processes. Gulf, at 89-90. The United States Supreme Court noted, "The court made neither factual findings nor legal arguments supporting the need for this sweeping restraint order." Id. at 103. The Court continued, "We conclude that the imposition of the order was an abuse of discretion. The record reveals no grounds on which the District Court could have determined that it was necessary or appropriate to impose this order. [Footnote] Although we do not decide what standards are mandated by the First Amendment in this kind of case, we do observe that the order involved serious restraints on expression. This fact, at minimum, counsels caution on the part of a district court in drafting such an order, and attention to whether the restraint is justified by a likelihood of serious abuses." Id., footnote omitted.

Notably, in Gulf, no class notice had been provided and the prospective class members were under a significant time pressure to decide whether to accept an offer of backpay in exchange to releasing any claims of discrimination. Gulf, at 91, 100. Here, of course, the prospective members have been given legally correct information about the litigation and been encouraged to seek out advice from counsel. There is no risk of them losing rights by failing to opt-in. At most, they simply miss the opportunity to enter this litigation, but they are not precluded from initiating their own litigation.

Likewise, plaintiffs' counsel rely upon Parks v. Eastwood Ins. Servs., Inc., 235 F.Supp.2d 1082, 1082 (C.D. Cal. 2002) for the proposition that "Communication with the putative class in a Section 216(b) action is permissible without opposing counsel's permission, so long as the communication does not 'undermine or contradict the court's own notice.'" As recited above, the

advertisement above *does* undermine the Court's notice in many ways.

The plaintiff's citation to Soto v. Castlerock Farming & Transp., Inc., 2013 WL 6844398, (E.D. Cal. Dec. 23, 2013) and Munoz v. Giumarra Vineyards Corp., 2012 WL 2612016, at *6 (E.D. Cal. July 5, 2012) are equally unavailing. Both Soto and Munoz were in a pre-class certification posture and, though there were allegations of misinformation being provided to workers, there was no evidence of this. This is different from the current situation, as set forth above.

In Cox Nuclear Med. v. Gold Cup Coffee Servs., Inc., 214 F.R.D. 696, 697-698 (S.D. Ala. 2003), the court concluded that for the court to restrict communications with Rule 23 class members, "Two kinds of proof are required. First, the movant must show that a particular form of communication has occurred or is threatened to occur. [Footnote] Second, the movant must show that the particular form of communication at issue is abusive in that it threatens the proper functioning of the litigation. Abusive practices that have been considered sufficient to warrant a protective order include communications that coerce prospective class members into excluding themselves from the litigation [Footnote]; communications that contain false, misleading or confusing statements; [Footnote] and communications that undermine cooperation with or confidence in class counsel. [Footnote]." (Footnotes omitted)

Assuming Cox applies here, as noted throughout, the Court finds that there has been communication with prospective members of the collection through an advertisement that singled out two specific groups. It was not a generalized message but, instead, a message targeted and directed to the two groups of KCSO employees at issue in these cases.[8] The Court finds that the advertisement contained patently false, inaccurate and misleading information that contradicting the express information provided in the Court-ordered notice. Therefore, the Court concludes the advertisement threatens the proper functioning of the litigation and according to Cox, cannot be tolerated.

This Court is obligated to ensure that prospective collection members receive accurate information so they may decide whether to opt in. The notice, which was stipulated to by Ms.

---

[8] The Court concludes that the advertisement is a solicitation of clients due to its targeted nature and because it misleads in various ways including that opt-ins will be represented by the Mahone Law Group, APC and Briana Kim, P.C. and that the lawyers are already acting on behalf of potential opt-ins. Cal. Rules. Prof Conduct 7.3(a).

Odenbreit, accurately told prospective members the information they need to decide whether to join the litigation, where they can go for further information and their rights related to the various possible outcomes of the litigation. In Hoffmann–La Roche Inc. v. Sperling, 493 U.S. 165, 170-171 (1989, the Court held that the "benefits [of the collective action], . . . depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate. Section 216(b)'s affirmative permission for employees to proceed on behalf of those similarly situated must grant the court the requisite procedural authority to manage the process of joining multiple parties in a manner that is orderly, sensible, and not otherwise contrary to statutory commands or the provisions of the Federal Rules of Civil Procedure. See Fed.Rule Civ.Proc. 83. It follows that, once an ADEA action is filed, the court has a managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way."] Because the advertisement failed to provide accurate information about the cases, the motion is **GRANTED**. Plaintiffs' counsel **SHALL NOT** communicate with potential collection member in a manner that is false, inaccurate or misleading, whether the communication is in writing, in an electronic medium or in person.

**IV.     Request to Extend the Deadline for Opt-Ins**

The plaintiffs assert that the deadline for opt-in should be extended 14 days due to the fact the Court refused to allow the meetings on January 18 and 19 to proceed. (Doc. 83 at 9) They argue that "the TRO should be lifted and the parties respectfully should get a brief continuation of the deadline by which to opt-in commensurate with the number of days between January 18, 2019 and the hearing date in this matter (or at least 14 days). Potential opt-ins can be notified by postcard sent by the class action administrator informing them of the continued deadline and briefly explaining why the continuance occurred, . . ." Id.

///
///
///
///
///

The Court **DENIES** this request because there remains sufficient time for potential opt-ins to weigh their options and to obtain legal advice while doing so. Also, the Court concludes that mailing a postcard telling the prospective collection members of the Court's findings here would likely undermine the confidence the collection members may have in this litigation and in counsel and would discourage them from joining the litigation for reasons apart from the merits of the cases.

IT IS SO ORDERED.

Dated: **February 1, 2019**  **/s/ Jennifer L. Thurston**
UNITED STATES MAGISTRATE JUDGE