UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DARREN WONDERLY, individually and on
behalf of those similarly situated,

Plaintiff,

v.

SHERIFF DONNY YOUNGBLOOD and
DOES 1 through 50,

Defendants.

Case No.  1:16-cv-01621-BAK (SKO)

ORDER GRANTING MOTION FOR
CONSOLIDATION FOR SETTLEMENT
PURPOSES AND APPROVAL OF FLSA
SETTLEMENT

(Doc. 112)

MARK ASHLEY, individually and on behalf
of those similarly situated,

Plaintiff,

v.

SHERIFF DONNY YOUNGBLOOD and
DOES 1 through 50,

Defendants.

Case No. 1:16-cv-01638-BAK (SKO)

## I.      INTRODUCTION

Before the Court are the parties' Joint Motion for Consolidation for Settlement Purposes
and Approval of FLSA Settlement (the "Motion") regarding two actions: *Wonderly v. Youngblood
(Wonderly)*, No. 1:16-cv-01621-BAK (SKO) (E.D. Cal. 2016) and *Ashley v. Youngblood (Ashley)*,

1

No. 1:16-cv-1638-BAK (SKO) (E.D. Cal. 2016).  (*Wonderly*, No. 1:16-cv-01621-BAK (SKO) at Doc. 112.)  The undersigned[1] reviewed the Motion and all supporting material and found the matter suitable for decision without oral argument pursuant to U.S. District Court for the Eastern District of California's Local Rule 230(g).  The hearing set for January 26, 2022, was therefore VACATED. (Doc. 120.)

For the reasons explained below, the Motion shall be granted.

## II. BACKGROUND

Plaintiff Darren Wonderly ("Plaintiff Wonderly"), on behalf of himself and those similarly situated current and former "Deputy Sheriffs" employed by the County of Kern (the "County"), initiated the *Wonderly* action on October 26, 2016, alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*.  (*Wonderly*, No. 1:16-cv-01621-BAK (SKO) at Doc. 1.) Plaintiff Mark Ashley ("Plaintiff Ashley"), on behalf of himself and those similarly situated current and former "Detention Deputies" employed by the County, initiated the *Ashley* action that same day, October 26, 2016, alleging FLSA violations.  (*Ashley*, No. 1:16-cv-01638-BAK (SKO) at Doc. 1.)  The *Wonderly* and *Ashley* actions were deemed related by the Court on January 3, 2017, finding that the cases "involve overlapping questions of law and are based on the same or similar claims." (*Wonderly*, No. 1:16-cv-01621-BAK (SKO) at Doc. 25.)

On April 14, 2017, the named defendants filed motions for judgment on the pleadings in both actions.  (*Wonderly*, No. 1:16-cv-01621-BAK (SKO) at Doc. 34; *Ashley*, No. 1:16-cv-01638-BAK (SKO) at Doc. 32.)  The motions were granted in part, all named defendants except for Defendant Donny Youngblood ("Defendant") were dismissed, and Plaintiff Wonderly and Plaintiff Ashley were permitted leave to amend their complaints with respect to certain claims.  (*Wonderly*, No. 1:16-cv-01621-BAK (SKO) at Doc. 44; *Ashley*, No. 1:16-cv-01638-BAK (SKO) at Doc. 42.)

Both plaintiffs allege in their First Amended Complaints (the operative pleadings) that Defendant violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, by failing to compensate employees for all work activities; unlawfully using a compensatory time off ("CTO")

---

[1] Due to the elevation of Judge Jennifer L. Thurston to the position of U.S. District Judge, as of January 6, 2022, this action is temporarily referred to the undersigned until a new Bakersfield magistrate judge is appointed.  (*See* Doc. 119.)

policy in lieu of paying wages; failing to maintain accurate pay records; and failing to include all remuneration in the calculation of overtime pay. (*See Wonderly*, No. 1:16-cv-01621-BAK (SKO) at Doc. 47 ¶¶ 8–9; *Ashley*, No. 1:16-cv-01638-BAK (SKO) at Doc. 45 ¶¶ 8–9.) On August 20, 2017, Defendant filed his answer to the First Amended Complaints in *Wonderly* (Doc. 52) and *Ashley* (Doc. 50).

On August 23, 2017, the Court entered a Scheduling Order, setting, among other things, deadlines for submission of a stipulated notice to opt-in plaintiffs and a consent form and for the filing of the consent form. (*Wonderly*, No. 1:16-cv-01621-BAK (SKO) at Doc. 57; *Ashley*, No. 1:16-cv-01638-BAK (SKO) at Doc. 55.) The parties stipulated to continue these deadlines on September 25, 2017. (*Wonderly*, No. 1:16-cv-01621-BAK (SKO) at Docs. 58 & 59; *Ashley*, No. 1:16-cv-01638-BAK (SKO) at Docs. 56 & 57.)

In early 2018, counsel for both Plaintiff Wonderly and Plaintiff Ashley was hospitalized with a serious illness, which delayed submission of the notice and consent form. (*See* Motion at 11.) On April 13, 2018, the parties submitted the stipulated notice and consent form in both actions (*Wonderly*, No. 1:16-cv-01621-BAK (SKO) at Doc. 64; *Ashley*, No. 1:16-cv-01638-BAK (SKO) at Doc. 62), which was approved by the Court in final form on May 8, 2018 (*Wonderly*, No. 1:16-cv-01621-BAK (SKO) at Doc. 70; *Ashley*, No. 1:16-cv-01638-BAK (SKO) at Doc. 68). Plaintiffs' counsel unfortunately passed away in July 2018, and the sending of the notice and consent form was again delayed to allow time for Plaintiff Wonderly and Plaintiff Ashley to retain substitute counsel. (*See* Motion at 11–12.)

The Court-approved notice and consent form was sent to all potential opt-in plaintiffs in November 2018. (*Id*. at 12.) In addition to Plaintiff Wonderly, seven individuals signed consents to join the action as plaintiffs, which were filed in the *Wonderly* action. (*See* Docs. 86 & 91.) Twenty individuals, in addition to Plaintiff Ashley, signed consents to join as plaintiffs in the *Ashley* action. (*See* Docs. 77, 78, 86, 90, & 92.)

On August 20, 2020, the parties participated in a mediation, but did not reach a settlement. (*See* Motion at 13.) The parties continued their settlement discussions beyond mediation while also engaging in discovery, including Plaintiffs' expert disclosures. (*Id*. at 14.) In March 2021, the

parties reached a tentative settlement, which was approved by the County Board of Supervisors as required.  (*Id.*)

From May 2021 to December 2021, the parties stipulated, and the Court agreed to stay the case while they finalized settlement documents and to file a motion for approval of the settlement.  (*See Wonderly*, No. 1:16-cv-01621-BAK (SKO) at Docs. 102–111; *Ashley*, No. 1:16-cv-01638-BAK (SKO) at Docs. 103–112.)

On December 21, 2021, the parties filed the Motion, which is presently before the Court.

### III.    DISCUSSION

#### A.    Consolidation

The parties in the *Wonderly* and *Ashley* actions seek to consolidate both cases "for settlement purposes" to "promote judicial economy."  (Motion at 8.)  Federal Rule of Civil Procedure 42(a) permits the Court to consolidate cases if they "involve a common question of law or fact."  A district court has broad discretion to determine whether and to what extent consolidation is appropriate.  *See Garity v. APWU Nat'l Labor Org*., 828 F.3d 848, 855-56 (9th Cir. 2016); *Investors Research Co. v. U.S. Dist. Ct. for the Cent. Dist. of Cal*., 877 F.2d 777, 777 (9th Cir. 1989).  In deciding whether to consolidate, a court should balance the interest of judicial convenience against "any inconvenience, delay, or expense that it would cause."  *Huene v. United States*, 743 F.2d 703, 704 (9th Cir. 1984); *Single Chip Sys. Corp. v. Intermec IP Corp.*, 495 F. Supp. 2d 1052, 1057 (S.D. Cal. 2007).  "[T]he law is clear that an act of consolidation does not affect any of the substantive rights of the parties."  J.*G. Link & Co. v. Continental Cas. Co*., 470 F.2d 1133, 1138 (9th Cir. 1972); *see also Schnabel v. Lui*, 302 F.3d 1023, 1034-35 (9th Cir. 2002).

Here, consolidating *Wonderly* and *Ashley* is appropriate.  Both actions involve common questions of law and facts as Plaintiffs in both cases are suing Defendant under the FLSA related to their roles working as a Deputy Sheriff or a Detention Deputy.  Plaintiffs also seek the same type of relief.  "Given the similarity of the two actions, the Court does not believe that any undue delay, confusion, or prejudice would result from consolidation."  *Pereira v. Ralph's Grocery Co.*, No. CV 07-841 PA(FFMX), 2010 WL 6510338, at *2 (C.D. Cal. Mar. 24, 2010).  "Moreover, keeping [two] separate actions would create a burden on the parties . . . and the court, as well as extend the length

of time and the expenses necessary to resolve [the settlement]." *Taylor v. White Oak Pastures, Inc.*, No. 1:15-CV-156 (LAG), 2021 WL 5450138, at *2 (M.D. Ga. Jan. 20, 2021). Thus, the Court will consolidate both actions for the limited purpose of reviewing the parties' proposed FLSA settlement. *See Pereira*, 2010 WL 6510338, at *2 (consolidating actions "for the purposes of settlement"). *Accord Vittorioso v. Total Mktg. Concepts, Inc.*, No. 6:12-cv-1036-Orl-31GJK, 2013 WL 6133731, at *1 (M.D. Fla. Nov. 21, 2013) (consolidating FLSA actions "for settlement purposes").

### B.   FLSA Settlement

#### 1.   Terms of the Settlement Agreement

The parties' "Joint Stipulation of Settlement and Release" (the "Settlement Agreement") proposes a maximum gross settlement amount of $130,000.00 to members of the collective and counsel.   (Doc. 113-1, Declaration of Katherine J. Odenbreit ("Odenbreit Decl.") Ex. A ("Agreement") ¶ 6.)  This total amount is to be allocated to the following categories: (1) $43,329.00 to counsel for attorney's fees; (2) $15,505.37 to counsel for costs and expenses; (3) $10,000 each to Plaintiff Wonderly and Plaintiff Ashley as an incentive award; and (4) the remainder (approximately $51,165.63) to the members of the collective listed on Exhibit A to the Settlement Agreement in the amounts indicated.  (*Id.*; *see also* Odenbreit Decl. ¶ 3.)  The amounts to the collective shall be paid as follows: 1/3 allocated to alleged unpaid wages; 1/3 allocated to alleged penalties and/or liquidated damages; and 1/3 allocated to alleged unpaid interest.  (Agreement ¶ 6(a).)

#### 2.   Legal Standard

"The FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 69 (2013).  Because an employee cannot waive claims under the FLSA, they may not be settled without supervision of either the Secretary of Labor or a district court. *See Barrentine v. Ark.-Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981); *Kerzich v. Cty. of Tuolumne*, No. 1:16-cv-01116-DAD-SAB, 2019 WL 1755496, at *2 (E.D. Cal. Apr. 19, 2019); *Yue Zhou v. Wang's Restaurant*, No. 05-cv-0279 PVT, 2007 WL 2298046, at *1 n.1 (N.D. Cal. Aug. 8, 2007).  Thus, absent supervision by the

Secretary of Labor, settlement of collective action claims under the FLSA requires court approval. *See Jones v. Agilysys, Inc.*, No. C 12–03516 SBA, 2014 WL 108420, at *2 (N.D. Cal. Jan. 10, 2014); *see also Quiroz v. City of Ceres*, No. 1:17-cv-00444-DAD-BAM, 2019 WL 1005071, at *2 (E.D. Cal. Mar. 1, 2019) ("Settlement of collective action claims under the FLSA requires court approval."); *Dashiell v. Cnty. of Riverside*, No. EDCV 15-00211 JGB (SPx), 2018 WL 3629915, at *3 (C.D. Cal. July 19, 2018).

The Ninth Circuit has not established criteria for district courts to consider in determining whether a FLSA settlement should be approved. *Dunn v. Teachers Ins. & Annuity Ass'n of Am.*, No. 13-CV-05456-HSG, 2016 WL 153266, at *3 (N.D. Cal. Jan. 13, 2016). However, district courts in this circuit have applied the widely used standard adopted by the Eleventh Circuit, which looks to whether the settlement is a fair and reasonable resolution of a bona fide dispute. *Id.*; *see also Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1355 (11th Cir. 1982); *Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1172 (S.D. Cal. 2016); *Nen Thio v. Genji, LLC*, 14 F. Supp. 3d 1324, 1333 (N.D. Cal. 2014); *Yue Zhou*, 2007 WL 2298046, at *1.

Once it is established that there is a bona fide dispute, courts often apply the Rule 23 factors for assessing proposed class action settlements when evaluating the fairness of a FLSA settlement, while recognizing that some of those factors do not apply because of the inherent differences between class actions and FLSA actions.[2] *Khanna v. Inter-Con Sec. Sys., Inc.*, No. CIV S-09-2214 KJM GGH, 2013 WL 1193485, at *2 (E.D. Cal. Mar. 22, 2013). To determine whether the proposed FLSA settlement is fair, adequate, and reasonable, courts in this circuit have balanced factors such as:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Khanna v. Intercon Sec. Sys., Inc.*, No. 2:09-cv-2214-KJM-EFB, 2014 WL 1379861, at *6 (E.D.

---

[2] The Court is mindful of the Ninth Circuit's instruction that "mimicking the Rule 23 standards in evaluating section 216(b) collective actions is not appropriate." *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1113 (9th Cir. 2018).

Cal. Apr. 8, 2014), *order corrected*, 2015 WL 925707 (E.D. Cal. Mar. 3, 2015); *see also Pataky v. Brigantine, Inc.*, No. 3:17-cv-352 GPC (AGS), 2019 WL 183583, at *6 (S.D. Cal. Jan. 14, 2019) (approving settlement of a FLSA collective action settlement under the "reasonable compromise" standard which is satisfied if the settlement "passes muster under Rule 23 analysis"); *Almodova v. City & Cnty. of Honolulu*, Civil No. 07–00378 DAE–LEK, 2010 WL 1372298, at *4 (D. Haw. Mar. 31, 2010) (adopting class action settlement factors in evaluating a FLSA collective action settlement even though some of those factors will not apply). "District courts in this circuit have also taken note of the 'unique importance of the substantive labor rights involved' in settling FLSA actions and adopted a 'totality of circumstances approach that emphasizes the context of the case.'" *Kerzich v. Cty. of Tuolumne*, 335 F. Supp. 3d 1179, 1185 (E.D. Cal. 2018) (quoting *Selk*, 159 F. Supp. 3d at 1173). With this approach, a "district court must ultimately be satisfied that the settlement's overall effect is to vindicate, rather than frustrate, the purposes of the FLSA." *Selk*, 159 F. Supp. 3d at 1173. Settlements that reflect a fair and reasonable compromise of issues in dispute may be approved to promote the efficiency of encouraging settlement of litigation. *McKeen-Chaplin v. Franklin Am. Mortg. Co.*, No. C 10-5243 SBA, 2012 WL 6629608, at *2 (N.D. Cal. Dec. 19, 2012); *Quiroz*, 2019 WL 1005071, at *2.

### 3. Analysis

#### a. The FLSA Collective

As an initial matter, the Court observes that the parties seek approval of their FLSA settlement on behalf of a collective. The FLSA establishes an opt-in collective action procedure for employees allegedly denied wages and overtime pay. 29 U.S.C. § 216(b). Under the FLSA, "an employee may bring a FLSA collective action on behalf of himself/herself and other employees who are 'similarly situated'. . . ." *Millan v. Cascade Water Servs., In*c., 310 F.R.D. 593, 607 (E.D. Cal. 2015.) The Ninth Circuit has held that "plaintiffs are similarly situated, and may proceed in a collective, to the extent that they share a similar issue of law or fact material to the disposition of their FLSA claims." *Campbell*, 903 F.3d at 1117.

In *Campbell*, the court also approved of a two-step approach for determining whether a FLSA collective action may proceed. *Id*. at 1110. ("[A]s a general rule, the two-step process,

culminating in a decertification motion on or after the close of relevant discovery, has the advantage of ensuring early notice of plausible collective actions, then eliminating those whose promise is not borne out by the record."). In the first step, known as the notice stage, the plaintiff moves for preliminary certification and the district court applies a "lenient [standard] . . . loosely akin to a plausibility standard," with the analysis focused on a review of the pleadings but sometimes supplemented by declarations or limited other evidence. *Id.* at 1109; *see also Millan*, 310 F.R.D. at 607; *Lewis vs. Wells Fargo Co.*, 669 F. Supp. 2d 1124, 1127 (N.D. Cal. 2009). If granted, "preliminary certification results in the dissemination of a court-approved notice to the putative collective action members, advising them that they must affirmatively opt in to participate in the litigation." *Campbell*, 903 F.3d at 1109. In the second step, typically following discovery, the employer may move for decertification, showing the "similarly situated" requirement has not been satisfied and prompting the court to "take a more exacting look at the plaintiffs' allegations and the record." *Id.*

Here, the Court previously approved notices to putative collective members who fall within either of the two following groups: (1) they "have been employed as a Kern County Deputy Sheriff at any point in time since [three years from the date of the notice]," *see Wonderly*, No. 1:16-cv-01621-BAK (SKO) at Docs. 69 & 70, or (2) they "have been employed by Kern County as a Detention Deputy at any point in time since [three years from the date of notice]," *see Ashley*, No. 1:16-cv-01638-BAK (SKO) at Docs. 67 & 68. In completing this "notice stage," the Court preliminarily determined that these two groups were "similarly situated" to Plaintiff Wonderly and Plaintiff Ashley, respectively. *See Campbell*, 903 F.3d at 1109. The Court-approved opt-in notices were then sent to the putative collective members. (*See* Motion at 12.)

The case dockets reflect that seven opt-in plaintiffs have joined the *Wonderly* action, *see* Docs. 86 & 91, and twenty opt-in plaintiffs have joined the *Ashley* action, s*ee* Docs. 77, 78, 86, 90, & 92. In the Motion, the parties represent that they have identified three opt-in plaintiffs who are not similarly situated to Plaintiffs Wonderly and/or Ashley: (1) Edward Tucker, who is deceased and was not employed by the County during the relevant time period; (2) Angel Bravo, who was not employed by the County during the relevant time period; and (3) Enrique Bravo, who was not

1    employed by the Court as a Deputy Sheriff (but as a Sergeant and Lieutenant) during the relevant

2    time period.  (*See* Motion at 12 n.1)

3            Now that the case has progressed, the Court is in a position to be able to "take a more

4    exacting look at the plaintiffs' allegations and the record" to determine whether the "similarly

5    situated" requirement has been satisfied.  *See Campbell*, 903 F.3d at 1109; *see also Bishop v. Petro-*

6    *Chemical Transpor*t, 582 F. Supp. 2d 1290, 1294 (E.D. Cal. 2008) ("During this 'second stage'

7    analysis, a court reviews several factors, including: '(1) disparate factual and employment settings

8    of the individual plaintiffs; (2) the various defenses available to defendant which appear to be

9    individual to each plaintiff; (3) fairness and procedural considerations; and (4) whether plaintiffs

10   made the filings required by the ADEA before instituting suit.'") (quoting *Mooney v. Aramco*, 54

11   F.3d 1207, 1213 (5th Cir. 1996)).  The Court agrees that further investigation in this action has

12   uncovered evidence demonstrating that the "similarly situated" requirement has not been satisfied

13   with respect to the three individuals identified by the parties.  As such, the claims of these

14   individuals will be severed from this action and dismissed without prejudice to their filing a

15   separate action with respect to any such claim they may wish to pursue.  *Cf. Wallace v. City of San*

16   *Jose*, No. 5:16-CV-04914-HRL, 2017 WL 6017867, at *7 (N.D. Cal. Dec. 5, 2017) (granting

17   decertification of a conditionally certified FLSA collective action and allowing the action to

18   proceed only on behalf of the named plaintiffs).

19          The proposed FLSA settlement collective is therefore comprised of the remaining twenty-

20   four opt-in plaintiffs (in addition to Plaintiffs Wonderly and Ashley) (collectively, "Plaintiffs").

21   (*See* Motion at 12 n.1, 18; Agreement, Ex. A.)  Because this new collective "is composed entirely

22   of members" of the prior collective to whom the Court-approved notices were sent, the Court finds

23   that the remaining twenty-four members of the collective are "similarly situated" to Plaintiffs

24   Wonderly or Ashley without the need for further certification analysis.  *See Otey v. CrowdFlower,*

25   *Inc.,* No. 12-CV-05524-JST, 2015 WL 4076620, at *4 (N.D. Cal. July 2, 2015), *modified*, No. 12-

26   CV-05524-JST, 2016 WL 304747 (N.D. Cal. Jan. 26, 2016).  Likewise, because the parties do not

27   dispute that these remaining twenty-four members of the collective are similarly situated to Plaintiff

28   Wonderly or Ashley and seek to settle their claims, no further decertification analysis is necessary.

1   *Millan*, 310 F.R.D. at 607 ("Absent an argument that the parties are not similarly situated, this

2   Court need not look to the second step at all.").  *See also Weist v. City of Davis*, No. 2:16-CV-

3   01683-LEK, 2021 WL 601103, at *2 (E.D. Cal. Feb. 16, 2021) (noting lack of opposition to motion

4   to approve FLSA settlement that included a request that the collective action be certified).

5          Based on the foregoing, this Court finds that the collective agreed upon by the parties set

6   forth in Exhibit A to Settlement Agreement that totals 26 members, are all similarly situated, and

7   that it is reasonable and appropriate for this action to proceed as a collective action for purposes of

8   settlement pursuant to 29 U.S.C. § 216(b).[3]  (*See* Agreement, Ex. A.  *See also* Motion at 12 n.1,

9   18).

10                    b.      Bona Fide Disputes

11         "A bona fide dispute exists when there are legitimate questions about the existence and

12  extent of Defendant's FLSA liability."  *Kerzich*, 335 F. Supp.3d at 1184 (quoting *Selk*, 159 F. Supp.

13  3d at 1172).  A court will not approve a settlement of an action in which there is certainty that the

14  FLSA entitles plaintiffs to the compensation they seek, because to do so would shield employers

15  from the full cost of complying with the statute.  *Selk*, 159 F. Supp. 3d at 1172; *see also Dashiell*,

16  2018 WL 3629915, at *3 ("The reason for this requirement is to safeguard against an employee

17  waiving his or her claims for wages, overtime compensation, or liquidated damages when there is

18  no actual dispute between the parties.").

19         Here, the parties contend that there are bona fide disputes regarding the existence and extent

20  of Defendant's FLSA liability.  (*See* Motion at 16–17; Odenbreit Decl. ¶¶ 13–14.)  The *Wonderly*

21  plaintiffs claim that they were not paid for time spent performing work duties before and after their

22  recorded work time, including time spent maintaining and cleaning their weapons.  (*See Wonderly*,

23  No. 1:16-cv-01621-BAK (SKO) at Doc. 47 ¶ 8.)  Plaintiff Ashley and the *Ashley* opt-in plaintiffs

24  allege they were not paid for time spent before and after their scheduled shifts, including arriving

25  to work early to attend daily briefing, picking up work gear before clocking in, returning work gear

26  _____

27  [3] The introduction to the Motion states that "[t]he Parties contend the settlement is fair and reasonable and provides
    fair compensation to each Plaintiff and opt-in plaintiff based both on the allegations set forth in the complaint and
    provides an immediate monetary benefit to *27* Plaintiffs."  (Motion at 3 (emphasis added).)  The Court assumes that

28  this reference to 27—as opposed to the 26 individuals listed in Exhibit A to the Settlement Agreement and referenced
    elsewhere in the Motion—is a typographical error.

                                                        10

1    after clocking out, and preparing required reports after work hours.  (*See Ashley*, No. 1:16-cv-

2    01638-BAK (SKO) at Doc. 45 ¶ 8.)  Defendant denies any failure to comply with the FLSA.  (*See*

3    *Wonderly*, No. 1:16-cv-01621-BAK (SKO) at Doc. 52 ¶ 8; *Ashley*, No. 1:16-cv-01638-BAK (SKO)

4    at Doc. 50 ¶ 8.)  Defendant further alleges that Plaintiffs are barred from recovery because they

5    were "subject to the FLSA overtime threshold specified in 29 U.S.C. section 207(k), because the

6    City adopted a Section 7(k) work period for employees engaged in law enforcement activities

7    pursuant to 29 U.S.C. section 207(k)."  (*See Wonderly*, No. 1:16-cv-01621-BAK (SKO) at Doc. 52

8    at 5; *Ashley*, No. 1:16-cv-01638-BAK (SKO) at Doc. 50 at 5.)

9        The parties also note that there is a dispute regarding the applicable statute of limitations,

10   specifically whether the FLSA violations at issue in this case were willful.  (*See* Motion at 17;

11   Odenbreit Decl. ¶ 15.)  Generally, the limitations period for any cause of action to recover unpaid

12   minimum wages, unpaid overtime compensation, or liquidated damages under the FLSA is two

13   years after the cause of action accrued.  29 U.S.C. § 255(a).  However, where the violation arises

14   out of a willful violation of the FLSA, the action may be commenced within three years after the

15   cause of action accrued.  *Id.* ("[E]very such action shall be forever barred unless commenced within

16   two years after the cause of action accrued, except that a cause of action arising out of a willful

17   violation may be commenced within three years after the cause of action accrued.").  The parties

18   contend that if Defendant's conduct is found not willful, Plaintiffs would be precluded from

19   recovering damages beyond two years prior to filing this action.  (*See* Motion at 17; Odenbreit

20   Decl. ¶ 15.  *See also Wonderly*, No. 1:16-cv-01621-BAK (SKO) at Doc. 52 at 6; *Ashley*, No. 1:16-

21   cv-01638-BAK (SKO) at Doc. 50 at 6.)

22       Because Defendant contests its liability and willfulness as a factual matter under the FLSA

23   as alleged by Plaintiffs, the Court is satisfied that there are bona fide disputes at issue here.  *See*

24   *Castro v. Paragon Industries, Inc*., No. 1:19-cv-00755-DAD-SKO, 2020 WL 1984240, at *12

25   (E.D. Cal. Apr. 27, 2020) (bona fide dispute found where defendant contended it had complied with

26   the FLSA's minimum wage and overtime compensation requirements) (collecting cases);

27   *McKinnon v. City of Merced*, No. 1:18-cv-01124-NONE-SAB, 2020 WL 4813206, at *9 (E.D. Cal.

28   Aug. 19, 2020) ("Based on the parties' opposing positions regarding whether Defendant's conduct

1   was willful, the Court finds a bona fide dispute exists over such fact and which limitations period

2   is applicable to this action.").

3                              c.      Fairness and Reasonableness of the Parties' Proposed Settlement

4           To determine whether a FLSA settlement is fair and reasonable, the court evaluates the

5   "totality of the circumstances" within the context of the purposes of the FLSA.  *Slezak v. City of*

6   *Palo Alto*, No. 16-cv-03224-LHK, 2017 WL 2688224, at *3 (N.D. Cal. June 22, 2017).  Courts in

7   this circuit have considered the following factors when determining whether a settlement is fair and

8   reasonable under the FLSA: (1) the plaintiffs' range of possible recovery; (2) the stage of

9   proceedings and amount of discovery completed; (3) the seriousness of the litigation risks faced by

10  the parties; (4) the scope of any release provision in the settlement agreement; (5) the experience

11  and views of counsel and the opinion of participating plaintiffs; and (6) the possibility of fraud or

12  collusion.  *See Selk*, 159 F. Supp. 3d at 1173; *Slezak*, 2017 WL 2688224, at *3; *Roberts v. City of*

13  *Chula Vist*a, No. 16-cv-1955-MMA-DHB, 2017 WL 6541105, at *2 (S.D. Cal. Dec. 21, 2017).

14  The Court addresses each of these factors below.

15                              i.      *Plaintiffs' Range of Possible Recovery*

16          "A district court evaluates the plaintiff[s'] range of potential recovery to ensure that the

17  settlement amount agreed to bears some reasonable relationship to the true settlement value of the

18  claims." *Selk*, 159 F. Supp. 3d at 1174 (citation omitted); *see also Millan*, 310 F.R.D. at 611.  While

19  courts in the Ninth Circuit have generally found that FLSA cases settling for "25%-35% of the

20  total possible recovery" to be reasonable, *Heath*, 2019 WL 3842075, at *5 (collecting cases), "[t]he

21  settlement amount need not represent a specific percentage of the maximum possible recovery[.]"

22  *Selk*, 159 F. Supp. 3d at 1174 (citation omitted).  Nonetheless, in "comparing the amount proposed

23  in the settlement with the amount that plaintiffs could have obtained at trial, the court must be

24  satisfied that the amount left on the settlement table is fair and reasonable under the circumstances

25  presented." *Id* (citations omitted).  "It is well-settled law that a cash settlement amounting to only

26  a fraction of the potential recovery does not per se render the settlement inadequate or unfair."  *In*

27  *re Mego Fin. Corp. Sec. Litig*., 213 F.3d 454, 459 (9th Cir. 2000), *as amended* (June 19, 2000)

28  (quoting *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982)).  "Even a

fractional recovery of the possible maximum recovery amount may be fair and adequate in light of the uncertainties of trial and difficulties in proving the case." *Millan*, 310 F.R.D. at 611.

The parties' Settlement Agreement provides for a total settlement amount of $130,000.00, with the gross payments to each collective member set forth in its attached Exhibit A. (Agreement ¶ 6(a).)  According to Plaintiffs' retained damages expert, the total potential recovery for the collective is $588,559, comprised of $289,492.50 in uncompensated work time, $289,492.50 in liquidated damages, $4,787 in uniform maintenance pay, and $4,787 in additional overtime pay. (*See* Doc. 113-2, Odenbreit Decl. Ex. C.)  The amount secured by the Settlement Agreement is therefore equivalent to approximately 22% of Plaintiff's maximum damages analysis.  Given Plaintiffs' claims and Defendant's potential defenses, as detailed above, the Court finds the settlement amount to be a reasonable compromise and within the range of reasonableness for wage and hour actions.  *See, e.g., Selk*, 159 F. Supp. 3d at 1176 ($50,000 settlement representing 26%–50% of potential recovery reasonable); *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 256 (N.D. Cal. 2015) (finding a wage and hour class settlement fair where the settlement fund represented between 9%–27% of the total potential recovery); *Jones v. Agilysys, Inc.*, No. C 12-03516 SBA, 2014 WL 2090034, at *2 (N.D. Cal. May 19, 2014) (approving an FLSA settlement that constituted "between 30% to 60% of recoverable damages, and affords the putative class members a tangible monetary benefit"); *Monterrubio v. Best Buy Stores*, L.P., 291 F.R.D. 443, 454 (E.D. Cal. 2013) (approving settlement representing "57% of Defendant's maximum exposure analysis and 30% of Plaintiff's maximum damages analysis"); *Glass v. UBS Fin. Serv., Inc.*, No. C–06–4068, 2007 WL 221862, at *4 (N.D. Cal. Jan. 26, 2007) (finding a wage and hour settlement in the range of 25%–35% of claimed damages fair and reasonable in light of the uncertainties involved in the litigation).

In finding the settlement amount fair and reasonable, the Court also stresses the possibility that Plaintiffs could recover nothing, and "the certainty of recovery helps prevent the additional damage that would befall plaintiffs if the case proceeds and is ultimately resolved against them." *See Selk*, 159 F. Supp. 3d at 1176.  Finally, the Court notes that there are no objections to the Settlement Agreement by the opt-in plaintiffs in *Wonderly* or *Ashley*.  "This further weighs in favor

of final approval." *Jefferson v. Flagstar Bank FSB*, No. SACV 14-382-JLS (RNBx), 2015 WL 13917273, at *3–4 (C.D. Cal. June 24, 2015) (citing *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) ("[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption the terms of a proposed class settlement action are favorable to the class members")).

> ii.     *The Stage of the Proceedings and the Amount of Discovery Completed*

The Court is also required to evaluate the stage of the proceedings and the amount of discovery completed to ensure that "the parties carefully investigated the claims before reaching a resolution." *Ontiveros v. Zamora*, 303 F.R.D. 356, 371 (E.D. Cal. 2014). This factor will weigh in favor of approval if the parties have sufficient information to make an informed decision regarding settlement. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998).

Here, the parties have gathered sufficient information to make an informed decision regarding settlement. The *Wonderly* and *Ashley* actions were filed in 2016. Although there was a delay in commencing discovery due to the health condition and death of Plaintiffs' previous attorney, written discovery was promptly commenced in 2018, once new counsel was retained, and notice sent to potential opt-in plaintiffs. (*See* Motion at 22; Odenbreit Decl. ¶¶ 8–9.) At the time of settlement, Plaintiffs had served a complete set of written discovery pertaining to all of the plaintiffs. (*See id.*) In response, Defendant produced over 22,000 pages of responsive documents. (*See id.*) These documents included information related to Defendant's CTO policies and practices, the applicable memoranda of understanding, timekeeping system documents and information, and detailed time and pay records for all plaintiffs. (*See id.*) Based on this information, Plaintiffs constructed their estimate of liability. This factor weighs in favor of settlement. *See Miranda v. City of Ceres*, No. 1:18-cv-00041-DAD-BAM, 2020 WL 5495260, at *5 (E.D. Cal. Sept. 11, 2020); *Talavera v. Sun-Maid Growers of Cal.*, No. 1:15-cv-00842-DAD-SAB, 2020 WL 2195115, at *7 (E.D. Cal. May 6, 2020).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

        *iii.*         *The Seriousness of the Litigation Risks Faced by the Parties*

Courts favor settlement where "there is a significant risk that litigation might result in a lesser recover[y] for the [collective] or no recovery at all." *Bellinghausen*, 306 F.R.D. at 255.  As discussed above, Defendant disputes its liability with respect to Plaintiffs' FLSA claims.  If this case were to proceed to trial, Plaintiffs' recovery for their FLSA claims would be uncertain and the collective might not receive the amount allocated under the Settlement Agreement.  The Court finds that it is likely that prolonging this case would generate needless litigation for both sides, and that the parties will likely benefit financially by settling this action now.  Accordingly, consideration of this factor weighs in favor of approval of the parties' proposed settlement.  *See Englert v. City of Merced*, No. 1:18-cv-01239-NONE-SAB, 2020 WL 2215749, at *9 (E.D. Cal. May 7, 2020).

        *iv.*         *Scope of Release Provision in the Settlement Agreement*

The Court reviews the scope of any release provision in an FLSA settlement to ensure that the collective action members are not pressured to forfeit claims, or waive rights, that are unrelated to the litigation.  *Selk*, 159 F.Supp.3d at 1178.  "A FLSA release should not go beyond the specific FLSA claims at issue in the lawsuit itself."  *Seguin v. Cty. of Tulare*, No. 1:16-CV-01262-DAD-SAB, 2018 WL 1919823, at *4 (E.D. Cal. Apr. 24, 2018) (quoting *Slezak*, 2017 WL 2688224, at *4).  "The concern is that an expansive release of claims would effectively allow employers to use employee wages—wages that are guaranteed by statute—as a bargaining chip to extract valuable concessions from employees."  *Selk*, 159 F.Supp.3d at 1178.

Here, Plaintiffs are releasing all claims and causes of action, known or unknown, that "were alleged or reasonably arise out of the acts alleged" in the *Wonderly* and *Ashley* actions.  (Agreement ¶ 11.)  This includes "all claims for wages, and including associated liquidated damages, interest, and penalty claims that were asserted or could have been asserted in this lawsuit under federal law," including the FLSA, between October 26, 2015, and Court approval.  (*Id.*)  The parties expressly provide that the collective members "do not release any claim wholly unrelated to the wage and hour subject matter, specifically including those covered by workers' compensation, unemployment compensation or discrimination law, or any other claims that cannot be released by law."  (*Id.*)  The Court finds that the scope of the released claims weighs in favor of finding the

settlement to be fair and reasonable. *See Dahl v. Bay Power Inc.*, No. 20-CV-07062-HSG, 2021 WL 2313388, at *2 (N.D. Cal. May 28, 2021) (finding release clause limited to claims that could "reasonably arise out of the acts alleged" in the action "not overly broad as it does not release claims unrelated to the wage-and-hour subject matter.") (citing *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 748 (9th Cir. 2006) ("[A] federal court may release not only those claims alleged in the complaint, but also a claim 'based on the identical factual predicate as that underlying the claims in the settled class action.'")). *See also Carter v. Anderson Merchs.*, LP, No. EDCV 08-00025-VAP (OPx), 2010 WL 144067, at *10 (C.D. Cal. Jan. 7, 2010) ("Since neither release prevents Class Members from pursuing claims unrelated to the settlement, the release is fair and reasonable.").

> v.      *The Experience and Views of Counsel and the Opinion of the Participating Plaintiffs*

In determining whether a settlement is fair and reasonable, "[t]he opinions of counsel should be given considerable weight both because of counsel's familiarity with th[e] litigation and previous experience with cases." *Larsen v. Trader Joe's Co.*, No. 11-cv-05188-WHO, 2014 WL 3404531, *5 (N.D. Cal. July 11, 2014). *See also Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 528.

Here, counsel for both parties state that they have extensive experience in litigation of class and collective action matters. (Odenbreit Decl. ¶¶ 19–26; Doc. 118, Declaration of Briana Kim ("Kim Decl."), ¶¶ 3–9; Doc. 114, Declaration of Nathan W. Austin ("Austin Decl.") ¶4.) Plaintiffs' and Defendant's counsel believe that this settlement is fair and reasonable based on their investigation of the claims and defenses in this case. (Odenbreit Dec., ¶¶ 28–29; Austin Decl. ¶4.) Plaintiffs' counsel further opines that a better result at trial is speculative and the significant increase in costs and risk could jeopardize any recovery at all for Plaintiffs. (Odenbreit Dec. ¶ 29.) Finally, Plaintiffs also support this settlement. Counsel has advised and explained the terms of the settlement to all of the plaintiffs, (*Id.* ¶30), and no opt-in plaintiff has expressed any objection or dissatisfaction with the settlement as of the date of the filing of the Motion.

Therefore, consideration of this factor weighs in favor of approval of the proposed settlement. *See Bellinghausen*, 306 F.R.D. at 257.

1

2

*vi.         The Possibility of Fraud or Collusion*

The parties assert that the settlement was reached through arms-length negotiations and

3

there has been no collusion or fraud.  In evaluating the settlement, the court must ensure that "the

4

agreement is not the product of fraud or overreaching by, or collusion between, the negotiating

5

parties."  *Monterrubio*, 291 F.R.D. at 453 (quoting *Officers for Justice*, 688 F.2d at 625).  "[I]t is

6

appropriate for the court to consider the procedure by which the parties arrived at their settlement

7

to determine whether the settlement is truly the product of arm's length bargaining, rather than the

8

product of collusion or fraud."  *Millan*, 310 F.R.D. at 613.

9

The parties engaged in a full day mediation with a professional mediator.  (See Motion at

10

13; Odenbreit Decl. ¶ 10.)  While the matter did not settle that day, the parties continued discussions

11

beyond mediation that eventually led to settlement.  (*Id.*)  The fact that the parties participated in

12

mediation before agreeing to a settlement "tends to support the conclusion that the settlement

13

process was not collusive."  *Millan*, 310 F.R.D. at 613 (quoting *Palacios v. Penny Newman Grain,*

14

*Inc.,* No. 1:14-CV-01804-KJM, 2015 WL 4078135, at *8 (E.D. Cal. July 6, 2015)).  There are no

15

indications that the settlement was the result of collusion or fraud, and the Court finds that the

16

settlement was reached by arm's length bargaining.  *See Englert*, 2020 WL 2215749, at *10.

17

Moreover, while the attorney's fees sought by counsel are approximately one-third of the

18

gross settlement amount (*see below*), those fees "will not diminish the settlement payments to

19

members of this collective action," because those payments were determined based on workweeks

20

worked by the plaintiffs.  *Talavera*, 2020 WL 2195115, at *9 (citing *Selk*, 159 F. Supp. 3d at 1179–

21

80 ("[T]he amount of the individual settlement payments to be received by opt-in members is based

22

on an analysis of employee time records and an estimate of the degree of under-compensation

23

during the relevant period.  This approach guards against the arbitrariness that might suggest

24

collusion.") (citation omitted)).  Consideration of this factor also weighs in favor of approval.

25

*vii.        Consideration of the Selk Factors Weighs in Favor of Settlement*

26

27

Generally, approval of a settlement that is not clearly inadequate is "preferable to lengthy

and expensive litigation with uncertain results."  *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 526.

28

*See Millan*, 310 F.R.D. at 611.  As the Court noted above, all of the factors to be weighed under the totality of the circumstances test described in *Selk* favor finding the settlement to be fair and reasonable.  The Court is satisfied that the proposed settlement's overall effect is to vindicate the policy goals and purposes of the FLSA, and approves the settlement as a fair and reasonable resolution of a bona fide dispute.

d.   <u>Incentive Awards</u>

At its discretion, a district court may award incentive payments to named plaintiffs in FLSA collective actions to compensate them for work completed on behalf of the collective.  *See Selk*, 159 F. Supp. 3d at 1181 (discussing FLSA collective action cases); *Dudley v. TrueCoverage LLC*, No. CV 18-3760 PA (AGRx), 2019 WL 3099661, at *5 (C.D. Cal. Mar. 22, 2019).  "In reviewing whether an incentive award is appropriate, the court should consider, among other things, 'the actions the plaintiff has taken to protect the interests of the [collective], the degree to which the [collective] has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation.'"  *Dudley*, 2019 WL 3099661, at *5 (quoting *Selk*, 159 F. Supp. 3d at 1181).  Such incentive awards are particularly appropriate in wage-and-hour actions where a plaintiff undertakes a significant reputational risk by bringing suit against his or her former employers.  *Rodriguez*, 563 F.3d at 958–59.

The Ninth Circuit has emphasized, however, that "district courts must be vigilant in scrutinizing all incentive awards."  *Radcliffe v. Experian Info. Sols., Inc.*, 715 F.3d 1157, 1165 (9th Cir. 2013) (internal quotation marks and citation omitted); *see also Selk*, 159 F. Supp.3d at 1181 (scrutinizing incentive payments in FLSA collective actions is appropriate to ensure that the prospect of a large incentive payment did not influence the named plaintiff to the detriment of the collective).

Here, Plaintiffs Wonderly and Ashley will each receive an incentive payment of $10,000 under the proposed settlement.  (Agreement ¶ 6(b).)  This equates to roughly 15.3 percent of the total settlement fund of $130,000.00, which is a relatively high proportion of the overall settlement amount.  However, courts, including this court, have found awards comprising a significantly high portion of the common fund to be nevertheless reasonable.  *See, e.g., Bond v. Ferguson Enters.,*

*Inc.*, Civ. No. 1:09–1662 OWW MJS, 2011 WL 2648879, at *2, 15 (E.D. Cal. June 30, 2011) (approving an $11,250 incentive payment to each of the two named plaintiffs despite a $2,250,000 gross settlement); *Alvarado v. Nederend*, No. 1:08-cv-1099-OWW-DLB, 2011 WL 90228, at *5 (E.D. Cal. Jan. 11, 2011) (finding a $7,500 incentive award to each of the five representatives to be reasonable even where the gross settlement amounted to $505,058.60); *Ross v. U.S. Bank Nat'l Ass'n*, No C 07–2951 SI, 2010 WL 3833922, at *3 (N.D. Cal. Sept. 29, 2010) (approving an award of $20,000 to each of four named plaintiffs where settlement fund was $1,050,000.00, based on their contributions to litigation and the risk that being a class representative would harm their reputation).

Here, Plaintiffs Wonderly and Ashley appear to have been significantly involved in this litigation. (Motion at 26–27; Odenbreit Decl. ¶ 31; Doc. 115, Declaration of Mark Ashley ("Ashley Decl.") ¶¶ 7–9; Doc. 116, Declaration of Darren Wonderly ("Wonderly Decl.") ¶¶ 7–9.)  Plaintiff Wonderly states that he met with his attorneys over 25 times to discuss the case and to review documents.  (Wonderly Decl. ¶ 7.)  He actively sought replacement legal counsel upon the death of his former attorney.  (*Id*. ¶ 9)  He also attended union meetings and met and spoke with other deputies to discuss the case.  (*Id*. ¶ 7.)  Plaintiff Wonderly estimates that he has spent approximately 70–80 hours participating in this litigation.  (*Id*.)  Plaintiff Ashley states that he met with his attorneys over 20 times to discuss the case and to review documents, actively sought replacement legal counsel, and prepared and sent at least 50 emails and text messages to his attorneys.  (Ashley Decl. ¶¶ 7–9.)  Like Plaintiff Wonderly, Plaintiff Ashley attended union meetings, and met and spoke with other  deputies to discuss this case.  (*Id*. ¶ 7.)  Plaintiff Ashley estimates that he has spent approximately 80–90 hours participating in this litigation.  (*Id*.)  These are precisely the types of tasks for which an incentive award is appropriate. *See Staton v. Boeing Co*., 327 F.3d 938, 952 (9th Cir. 2003); *Ontiveros*, 303 F.R.D. at 366.

Plaintiff Wonderly and Plaintiff Ashley also allege that they experienced acts of retaliation and suffered adverse consequences to their career and future employment opportunities (*see* Wonderly Decl. ¶¶ 10–11; Ashley Decl. ¶¶ 10–14), making the requested incentive awards justified

in this case.[4]  *See Sanchez v. Frito-Lay, Inc.*, No. 1:14-cv-00797-DAD-BAM, 2021 WL 1813190, at *11 (E.D. Cal. May 6, 2021) ("Higher incentive award amounts can be appropriate, such as in employment actions, where a plaintiff risks retaliation or blacklisting by bringing suit against [their] employer.") (citing *Buccellato v. AT&T Operations, Inc.*, No. C10-00463-LHK, 2011 WL 4526673, at *4 (N.D. Cal. June 30, 2011)).  *See also Rodriguez*, 563 F.3d at 958–59.

Considering the above factors, the Court will approve incentive awards to Plaintiffs Wonderly and Ashley in the amount of $10,000 each.

e.     Attorney's Fees

"Where a proposed settlement of FLSA claims includes the payment of attorney's fees, the court must also assess the reasonableness of the fee award." *Selk*, 159 F. Supp. 3d at 1180; *see also* 29 U.S.C. § 216(b) (providing that, in a FLSA action, the court shall "allow a reasonable attorney's fee to be paid by the defendant, and costs of the action").  "Under Ninth Circuit law, the district court has discretion in common fund cases to choose either the percentage-of-the-fund or the lodestar method" for awarding attorney's fees.  *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).

The Ninth Circuit has generally set a twenty-five percent benchmark for the award of attorney's fees in common fund cases.  *Id.* at 1047–48; *see also In re Bluetooth*, 654 F.3d at 942 ("[C]ourts typically calculate 25 percent of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure.").  The Ninth Circuit has approved the use of "lodestar cross-checks" as a way of determining the reasonableness of a particular percentage recovery of a common fund.  *Vizcaino*, 290 F.3d at 1050 ("Where such investment is minimal, as in the case of an early settlement, the lodestar calculation may convince a court that a lower percentage is reasonable. Similarly, the lodestar calculation can be helpful in suggesting a higher percentage when litigation has been protracted.").

The parties have agreed that the settlement shall include $58,834.37 in total attorney's fees and costs, delineated as $43,329.00 in attorney's fees, and $15,505.37 in costs.  (Agreement ¶ 6(c).)

---

[4] Defendant denies Plaintiffs' allegations.  (*See* Motion at 27.)

The attorney's fee portion of $43,329.00 is approximately 33.3 percent of the total $130,000.00 settlement fund.  Although higher than the standard benchmark, which raises questions about its reasonableness, the Court will nonetheless approve the fee award based on several considerations.

First, this Court has approved awards in FLSA and class action settlements seeking a similar, and in many cases higher, percentage of the common fund than is sought here.  *See, e.g., Miranda,* 2020 WL 5495260, at *6 (approving 56.5 percent of common fund); *McKinnon*, 2020 WL 4813206, at *15 (approving 42.8 of the common fund); *Talavera*, 2020 WL 2195115, at *10 (approving 79 percent of the total settlement amount at preliminary approval, noting that "the fee-shifting provisions of the FLSA are intended to allow plaintiffs to find competent counsel if legal action is required to compel the employer to pay what is owed, because if the plaintiffs' claims are meritorious, counsel will be able to obtain its fees from defendants regardless of the size of the claims . . . .") (quoting *Kerzich*, 335 F. Supp.3d at 1188); *Milburn v. PetSmart, Inc*., No. 1:18-CV-00535-DAD-SKO, 2019 WL 1746056, at *11 (E.D. Cal. Apr. 18, 2019) (approving 33.3 percent at preliminary approval); *Beidleman v. City of Modesto*, No. 1:16-CV-01100-DAD-SKO, 2018 WL 1305713, at *6 (E.D. Cal. Mar. 13, 2018) (approving 30 percent of common fund where represents negative multiplier)

Second, Plaintiffs' recovery is wholly independent of any attorney's fees, and they are not responsible for any payment of attorney's fees and/or costs from their individual settlement amounts.  (*See* Agreement ¶ 6(c).)  This is an important to the Court's evaluation.  *See Miranda*, 2020 WL 5495260, at *7.

Finally, a lodestar cross-check generally demonstrates the reasonableness of the award.  Where a lodestar is merely being used as a cross-check, the court "may use a 'rough calculation of the lodestar.'" *Bond v. Ferguson Enters., Inc.*, No. 1:09-cv-1662-OWW-MJS, 2011 WL 2648879, at *12 (E.D. Cal. June 30, 2011) (quoting *Fernandez v. Victoria Secret Stores, LLC*, No. CV 06–04149 MMM (SHx), 2008 WL 8150856 (C.D. Cal. July 21, 2008)).

Plaintiffs submitted billing records in support of the request for attorney fees.  (Doc. 113-3, Odenbreit Decl. Ex. D (*Ashley*); Doc. 113-4, Odenbreit Decl. Ex. E (*Wonderly*); Doc. 118, Kim Decl. ¶ A.)  These records demonstrate that counsel have expended 294.7 hours (191.9 hours by

the Mahoney Law Group, APC; 102.8 hours by Briana Kim, P.C.) litigating the *Wonderly* and *Ashley* matters from July 11, 2018, to December 20, 2021. (*See id.*) The Court reviewed the time entries for the various timekeepers and found no readily apparent unreasonable expenditures of time.

Regarding hourly rates, this Court has previously accepted as reasonable for lodestar purposes rates of between $370 and $495 for associates, and between $545 and $695 for senior counsel and partners. *See Emmons v. Quest Diagnostics Clinical Labs., Inc.*, No. 1:13-cv-00474-DAD-BAM, 2017 WL 749018, at *8 (E.D. Cal. Feb. 27, 2017); *see also Quiroz*, 2019 WL 1005071, at *7 (same). According to counsel, using rates within the range of those previously accepted by this court ($400–450), the amount of fees expended would be calculated as $127,475.00. (Motion at 28; see also Doc. 113-3, Odenbreit Decl. Ex. D (*Ashley*); Doc. 113-4, Odenbreit Decl. Ex. E (*Wonderly*); Doc. 118, Kim Decl. Ex. A.) This far exceed the award of $43,329 in attorney's fees sought by counsel here.

For the foregoing reasons, the Court therefore will approve the award of attorney's fees in the amount of $43,329.00.

### f.   Costs

Plaintiffs also seek reimbursement for costs of $15,505.37 expended in this action. (Motion at 28; Odenbreit Decl. ¶ 33; Docs. 113-5 & 113-6, Odenbreit Exs. F & G; Kim Decl. ¶ 12.) The FLSA provides for an award of costs. 29 U.S.C. § 216(b). "[A]n award of expenses should be limited to typical out-of-pocket expenses that are charged to a fee paying client and should be reasonable and necessary." *In re Immune Response Sec. Litig.*, 497 F.Supp.2d at 1177. Reasonable expenses may be awarded for travel, postage, telephone, fax, notice, online legal research fees, mediation fees, filing fees and photocopies. *Id.*

Upon review of the expenses submitted, the Court finds them to be reasonable. The Court therefore awards costs in the amount of $15,505.37.

### IV.   CONCLUSION AND ORDER

Based on the foregoing, IT IS HEREBY ORDERED:

1.   The parties' Joint Motion for Consolidation for Settlement Purposes and Approval

of FLSA Settlement (*Wonderly*, No. 1:16-cv-01621-BAK (SKO) at Doc. 112) is GRANTED;

2. The Clerk of Court shall CONSOLIDATE *Wonderly v. Youngblood*, No. 1:16-cv-01621-BAK (SKO) with *Ashley v. Youngblood,* No. 1:16-cv-1638-BAK (SKO) (E.D. Cal. 2016) for settlement purposes;

3. All future filings and correspondences shall use Case No. 1:16-cv-01621-BAK;

4. The Clerk shall file a copy of this order in *Ashley v. Youngblood* , No. 1:16-cv-1638-BAK (SKO), and thereafter administratively CLOSE that case;

5. The claims of Edward Tucker, Angel Bravo, and Enrique Bravo, who are not similarly situated to Plaintiff Wonderly or Plaintiff Ashley, are DISMISSED WITHOUT PREJUDICE;

6. The Settlement Agreement, attached as Exhibit A to the Declaration of Katherine J. Odenbreit (Doc. 113), is approved as fair, reasonable and just in all respect as to Plaintiff Wonderly, Plaintiff Ashley, and the opt-in plaintiffs;

7. The Court approves the payment of attorney's fees in the amount of $43,329.00 to be paid as follows: $21,664.50 paid to Mahoney Law Group, APC and $21,664.50 paid to Briana Kim, P.C.;

8. The Court approves payment of litigation costs in the total amount of $15,505.37 to be paid as follows: $13,038.46 paid to Mahoney Law Group, APC and $2,466.91 paid to Briana Kim, P.C.;

9. The Court approves incentive awards in the amount of $10,000 to Plaintiff Darren Wonderly and $10,000 to Plaintiff Mark Ashley;

10. This action is hereby DISMISSED with prejudice, with the Court specifically retaining jurisdiction to enforce the Settlement Agreement; and

11. The Clerk of Court is directed to CLOSE this case.

IT IS SO ORDERED.

Dated:   **February 7, 2022**                     */s/ Sheila K. Oberto*

1                                                    UNITED STATES MAGISTRATE JUDGE
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28